FOR PUBLICATION

FILED

OCT 29 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RED EAGLE LAW, L.C,<br><br>Plaintiff - Appellee,<br><br>v.<br><br>MARCO RUBIO, in his official capacity as U.S. Secretary of State,<br><br>Defendant - Appellant. | No. 26-6943<br><br>D.C. No.<br>3:26-cv-04738-JO-VET<br>Southern District of California, San Diego<br><br>**ORDER** |

Before: M. Margaret McKeown, N. Randy Smith, and Holly A. Thomas, Circuit Judges.

PER CURIAM:
Concurrence by Judge N.R. SMITH

Under the Immigration and Nationality Act ("INA"), the U.S. Department of State (the "Department") is required to implement an annual program, known as the Diversity Visa Program, to award up to 55,000 visas to individuals from countries with low rates of immigration to the United States. 8 U.S.C. §§ 1151(e), 1153(c). Prior to the start of each fiscal year, the Department holds a lottery through which roughly 100,000 selectees from qualifying countries are chosen at random to apply for visas. *See id.* § 1153(e)(2); 22 C.F.R. § 42.33(c); Jill Wilson, Cong. Rsch. Serv., *The Diversity Immigrant Visa Program*, CRS Rep. No. R45973 (2019) at 2. For

fiscal year 2027, however, the Department failed—without any explanation—to open the lottery registration period, effectively canceling the 2027 Diversity Visa Program ("DV-2027 Program").

In August 2026, Red Eagle Law, L.C. ("Red Eagle"), an immigration law firm whose practice includes representing selectees for the Diversity Visa Program, filed suit, alleging that the suspension of the DV-2027 Program was arbitrary and capricious and unlawfully withheld agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 706(1), 706(2)(A), and was ultra vires. Red Eagle stands as the sole plaintiff in this suit; it did not join to the suit any prospective Diversity Visa applicants, nor has it claimed to presently represent such applicants.

On October 14, 2026, the district court entered a preliminary injunction, requiring the Department to reopen the DV-2027 Program. The court ordered the Department to announce the registration period by October 29, 2026, open registration by November 1, 2026, and notify selectees of their eligibility to apply by no later than December 3, 2026. The government appealed and now moves for an emergency stay pending appeal pursuant to Circuit Rule 27-3. As the party requesting a stay, the government "bears the burden of showing that the circumstances justify" a stay pending appeal. *Nken v. Holder*, 556 U.S. 418, 434 (2009). We grant the motion.

The government has made a strong showing that it is likely to succeed on the

merits of this suit, because Red Eagle has not demonstrated that it is "arguably within the zone of interests to be protected or regulated" by the Diversity Visa Program statute. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (citation modified); *see also* 5 U.S.C. § 702. The purpose of the Diversity Visa Program is to encourage immigration from countries with low immigration rates to the United States. *See* 8 U.S.C. § 1153(c). Red Eagle's economic interest in representing selectees for the Diversity Visa Program is not "more than marginally related to [the Diversity Visa Program's] purposes[.]" *E. Bay Sanctuary Covenant v. Trump* (*East Bay*), 932 F.3d 742, 768 (9th Cir. 2018).

For support, Red Eagle looks to our decision in *East Bay*, where we held that nonprofit organizations providing legal representation to asylum seekers fell within the zone of interests of the asylum statute. Statutory provisions in the INA expressly contemplated access to pro bono legal services. *Id.* (citing 8 U.S.C. § 1158(d)(4)(A)–(B)). But unlike the asylum statute at issue in *East Bay*, here, Congress did not include any provisions with respect to legal services for applicants or selectees for the Diversity Visa Program. *Cf. id.* at 768 (holding that nonprofit organizations' interest was more than marginally related to asylum statute's purpose because "[w]ithin the asylum statute, Congress took steps to ensure that pro bono legal services of the type that the Organizations provide are available to asylum seekers"). The Diversity Visa Program simply does not "directly rely on institutions

like [Red Eagle] to aid immigrants." *Id.* at 769.

Red Eagle also urges us to rely upon the D.C. Circuit's decision in *CSL Plasma Inc. v. U.S. Customs & Border Protection*, 33 F.4th 584 (D.C. Cir. 2022), again to no avail. In that case, the D.C. Circuit held that blood plasma companies that depended on plasma from Mexican donors with B-1 business visas fell within the B-1 classification's zone of interests because the statute was created to benefit American businesses. *Id.* at 587. The plasma companies were businesses benefiting from a statute intended to benefit businesses. The same plainly cannot be said of the Diversity Visa Program, which was enacted to encourage immigration, not generate revenue for law firms.

We do not endorse the Department's failure to open the lottery registration period. Nevertheless, Red Eagle has not shown a likelihood of success on the merits because it is not within the zone of interests of the statute and does not have a cause of action. The emergency motion for a stay pending appeal is **GRANTED**. The clerk shall in due course issue a briefing schedule for the appeal of the preliminary injunction.

FILED

OCT 29 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*Red Eagle Law, L.C. v. Rubio*, No. 26-6943

Smith, N. Randy, Circuit Judge, concurring:

Red Eagle Law also lacks Article III standing to challenge the government's failure to implement the 2027 DV Program. Let me explain.

The Constitution limits the federal judicial power to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. The Supreme Court has "established that the irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). These elements are: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 560–61 (citation modified). Further, the party invoking the jurisdiction bears the burden to establish these elements with evidence at each stage of the proceeding. *Id.* at 561.

Applying these minimum requirements for standing in this case, a plaintiff must first show an injury in fact. "An injury in fact must be 'concrete,' meaning

that it must be real and not abstract." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). It "must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon." *Id.* For an injunction, there must be "a sufficient likelihood of future injury." *Id.* However, one cannot get standing to challenge a government action simply because one believes the government is acting illegally or based "on an asserted right to have the Government act in accordance with the law." *See id.* (citation modified). Those problems are the responsibilities of Congress or the President. *Id.* at 382.

Red Eagle Law does not bring this lawsuit on behalf of an alien who qualifies or may qualify through random selection for a visa under § 1153(c). Instead, Red Eagle Law, "a boutique law firm in San Diego County," claims it has standing (without regard to those who are the objects of the statute) based on a lost economic benefit from prospective clients, which they may in the future acquire but for the administration's failure to implement the 2027 DV Program.

Thus, Red Eagle Law does not establish injury in fact: (a) Red Eagle Law's allegations here are at best speculative. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) (expressing "reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). Under the DV Program, an alien must first decide to register for the lottery; must then win the lottery (about

100,000 applications chosen out of millions); thereafter submit a written application for an immigration visa; schedule and lastly appear before a consular officer who (in the officer's discretion) determines that the alien has satisfied all of the requirements for a visa, when at best only 55,000 visas will be issued. *See Ivanov v. Trump*, No. CV 26-2272 (RJL), 2026 WL 2494805, at *1–2 (D.D.C. Aug. 25, 2026). But that process (as speculative as it is) does not end this inquiry for Red Eagle Law. At that point, Red Eagle Law must show that the alien would employ the services of its law firm (in San Diego) instead of proceeding pro se or hiring another firm in the United States. Any injury (given these facts) cannot be concrete or particularized. An injury in fact cannot be established by simply alleging *any* monetary injury (however remote). Further, Red Eagle Law does not allege that their revenue has decreased because of the government's failure to implement the 2027 DV Program. Instead, it merely asserts that they have not been given the opportunity to earn additional "downstream" income from these hypothetical clients.[1] (b) While this opinion should not be read to absolve the State

---

[1] The Supreme Court similarly rejected doctors' alleged "downstream economic injuries," making it clear that a link between those injuries and FDA regulations were "too speculative" to establish standing. The Court reasoned that

> if [it] were now to invent a new doctrine of doctor standing, there would be no principled way to cabin such a sweeping doctrinal change to

(continued...)

Department's admission that it failed to follow the law, Red Eagle Law cannot obtain standing to challenge the actions of the government simply because it alleges the government acted illegally. *See All. for Hippocratic Med*., 602 U.S. at 381. Federal courts are "not a legislative assembly, a town square, or a faculty lounge" and do not "operate as an open forum for citizens to press general complaints about the way in which government goes about its business." *Id.* at 379, 382 (citation modified). Thus, "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally"; "[a] citizen may not sue based only on an asserted right to have the Government act in accordance with law"; and a citizen cannot sue "merely because their legal objection is accompanied by a strong moral, ideological, or policy objection to a government action." *Id.* at 381 (citation modified).

Second, "[t]he plaintiff must also establish that the plaintiff 's injury likely

---

[1](...continued)

> doctors or other healthcare providers. Firefighters could sue to object to relaxed building codes that increase fire risks. Police officers could sue to challenge a government decision to legalize certain activities that are associated with increased crime. Teachers in border states could sue to challenge allegedly lax immigration policies that lead to overcrowded classrooms.

*All. for Hippocratic Med.*, 602 U.S. at 392. This case is no different and will start a "path [that will] seemingly not end until virtually every citizen ha[s] standing to challenge virtually every government action that they do not like." *Id.*

was caused or likely will be caused by the defendant's conduct." *Id.* at 382. To establish a causal connection, the Supreme Court has outlined that, "[w]hen the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred . . . or proved . . . in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan*, 504 U.S. at 561. There is no dispute that the statute at issue, 8 U.S.C. § 1153(c), pertains to "diversity immigrants" and their allotment of visas each fiscal year. Section 1153(c) does not pertain to law firms representing those aliens or the profitability of those law firms at all. Therefore, Red Eagle Law is not the object of the government's action here. Instead, the statute and the government's actions relate only to the rights of aliens (third parties to this action).

Review of the cases, (including those relied on by Red Eagle Law and the district court to suggest Red Eagle Law has standing), confirms that the plaintiffs in those cases were the objects of the government action, they alleged direct economic harm, and they were not resting their claims for relief based on the interference with the rights of third parties. *See, e.g.*, *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 113–14 (2025) (finding standing for producers of gasoline because they were the likely object of the regulation and the decrease in

purchases of gasoline caused economic injury); *Isaacson v. Mayes*, 84 F.4th 1089, 1096 (9th Cir. 2023) (finding standing because plaintiffs-physicians who were directly affected by the Arizona statute were forced to "over-compl[y]" when providing care "rather than risk prosecution or penalties"); *Montana Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013) (finding standing for plaintiff firearm manufacturer challenging a federal firearms regulation that conflicted with Montana firearm laws based on "an economic injury resulting from laws explicitly prohibiting a business activity that he would otherwise engage"); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855 (9th Cir.), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002) (finding standing for trappers challenging a California statute that restricted use of certain kinds of traps because "the core of the trappers' injuries is not a hypothetical risk of prosecution but rather actual, ongoing economic harm resulting from their cessation of trapping"); *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 61 (9th Cir. 1994) (finding standing on behalf of a game manufacturer to challenge ordinance revoking licensing for such games). Again, all of these cases have in common what is missing here: the plaintiffs were the objects of the action, their injuries were not based on downstream (or collateral injury), and their relief was not based upon the rights of third parties.

The Supreme Court then continues, "[w]hen, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well." *Lujan*, 504 U.S. at 562. Thus, when standing depends on the choices of independent actors, standing is "substantially more difficult" to establish. *See id.* This caution from the Supreme Court makes sense, because "harm alone normally does not warrant exercise of jurisdiction," when the plaintiff cannot assert his own legal rights and interests without "rest[ing] his claim to relief on the legal rights or interests of third parties." *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). There is insufficient evidence in this record that choices of aliens have been or will be made in such a manner as to produce causation and permit redressability. This record simply evidences the past profitability of Red Eagle Law arising from DV cases based on only three years of historical information. Thus, Red Eagle Law has not established a causal connection.

As the Supreme Court said in *Alliance for Hippocratic Medicine*, "[t]he second and third standing requirements—causation and redressability—are often

'flip sides of the same coin.'" 602 U.S. at 380 (citation omitted). "If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury. So the two key questions in most standing disputes are injury in fact and causation." *Id.* at 381. Thus, I need not address redressability.

On reflection (after directly applying Supreme Court precedent), Red Eagle Law's claim of direct standing (based on its own monetary injuries) reflects merely an attempt to circumvent third-party standing with a hypothetical client (a claim, which the Supreme Court has found, lacks standing). *See Kowalski v. Tesmer*, 543 U.S. 125, 134 (2004). Courts have consistently rejected these same allegations, found in "third-party standing" cases to "prevent[] litigants from asserting the rights or legal interests of others simply to obtain relief from injury to themselves." *New York State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019) (citation modified); *see also All. for Hippocratic Med.*, 602 U.S. at 379–80 ("Limiting standing to persons with a 'personal stake' serves to protect the 'autonomy' of those who are most directly affected so that they can decide whether and how to challenge the defendant's action."). This case mirrors cases where the Supreme Court specifically cautioned against allowing lawyers to have "third-party standing to bring in court the claims of future unascertained clients." *Kowalski*,

543 U.S. at 134 & n.5 (explaining that if lawyers could establish standing by "mak[ing] a credible claim that a challenged regulation would affect his income to satisfy Article III[,] . . . the possibilities [thereafter] would be endless").

If Red Eagle Law were allowed to allege standing based upon its hypothetical or conjectural collateral injury, we would be opening the floodgates, allowing all lawyers to "roam the country in search of governmental wrongdoing."[2] *See All. for Hippocratic Med.*, 602 U.S. at 379. Absent Red Eagle Law establishing that it was the object of the DV Program and that its injury was more than a hypothetical or conjectural collateral injury, there cannot be Article III standing.

---

[2] This broad application of standing would not just be limited to lawyers. For example, in these very circumstances, employers of past DV Program recipients could allege that they are harmed economically. The Supreme Court cautioned against this type of expansion of standing.